UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-20976-BLOOM/Otazo-Reyes

PRECISION WELLNESS, LLC,

    Plaintiff,

v.

DEMETECH CORPORATION,

    Defendant.
_____/

## ORDER DENYING RULE 50 AND RULE 59 MOTIONS

**THIS CAUSE** is before the Court upon Plaintiff Precision Wellness LLC's ("Precision") Motion Under Fed. R. Civ. P. 50, ECF No. [71] ("Rule 50 Motion"), and Precision's Motion for an Order Amending or Reducing the Judgment Under Fed. R. Civ. P. 59, ECF No. [72] ("Rule 59 Motion"). Defendant Demetech Corporation ("Demetech") filed a Response to the Rule 50 Motion, ECF No. [73], to which Precision filed a Reply. ECF No. [74]. Demetech filed a separate Response to Precision's Rule 59 Motion, ECF No. [75], to which Precision filed a Reply. ECF No. [76]. The Court has carefully considered the parties' briefing, the trial transcripts, the record as a whole, the applicable law, and is otherwise fully advised. For the reasons explained below, Precision's Rule 50 Motion and Rule 59 Motion are denied.

    **I.**    **BACKGROUND**

On March 9, 2021, Precision initiated this case in the Eastern District of New York. ECF No. [1]. In its Complaint, Precision alleged that Demetech breached an Independent Contractor Agreement ("ICA") relating to the sale of masks during the COVID-19 pandemic. *Id.* Precision claimed that the ICA required Demetech to pay Precision a 5% commission for all sales that

Demetech made to non-party Honeywell, Inc. Precision asserted claims for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Unjust Enrichment, and Injunctive Relief.

On March 31, 2022, the case was transferred to the Southern District of Florida. ECF No. [29]. Demetech thereafter filed its Answer, Affirmative Defenses, and Counterclaim, raising seven Affirmative Defenses, ECF No. [37]. Relevant to Precision's Motions is the Fraud in the Inducement Affirmative Defense. Demetech asserted five Counterclaims: Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Negligent Misrepresentation, Fraud, and Rescission.

No substantive pretrial motions were filed, and this case proceeded to trial on May 8, 2023. Prior to jury selection, Precision stated that it was abandoning its claims of Breach of Covenant of Good Faith and Fair Dealing and Injunctive Relief. ECF No. [77] at 4. Demetech likewise abandoned its claim of Breach of Covenant of Good Faith and Fair Dealing. *Id*. at 5.

The parties presented evidence over the course of three days. *See* ECF Nos. [60], [61], [62]. The primary witnesses were Tashfeen Qayyum ("Qayyum"), the owner of Precision, and Luis Arguello, Jr., ("Arguello"), president of Demetech. The undisputed evidence showed that Qayyum signed a Proforma Invoice stating that Precision would purchase 50,000,000 surgical masks from Demetech for $9 million. ECF No. [58-6] (Proforma Invoice). Arguello subsequently signed an Independent Contractor Agreement ("ICA"), stating that Demetech would pay a 5% commission for sales made by Precision. ECF No. [58-7] (ICA). Precision never sent payment in accordance with the Proforma Invoice, and Demetech never paid pursuant to the ICA.

Qayyum testified that the only valid contract was the ICA; Arguello testified that only the Proforma Invoice was valid. Arguello explained that he signed the ICA because he expected Precision to perform pursuant to the Proforma Invoice. He further testified that he subsequently

came to understand that Qayyum never intended to perform under the Proforma Invoice, Qayyum misrepresented his affiliation with a company that competed with Demetech (Liberty Mask), and Qayyum appropriated and altered Precision's marketing materials.

Demetech introduced evidence supporting Arguello's testimony. ECF No. [68-50] at 4 (email from Qayyum declaring himself CEO of Liberty Mask); ECF No. [68-43] at 2-4 (email from Liberty Mask employee indicating that, at the time Qayyum was meeting with Arguello, Qayyum was the CEO of Liberty Mask); ECF Nos. [68-44], [68-45] (an authentic version of Demetech's marketing materials and a version that was altered to replace Demetech with "TriageDX," another company Qayyum operated).

Qayyum conceded that his company copied and altered Demetech's marketing materials without Demetech's permission. ECF No. [79] at 37-38. Qayyum disputed his affiliation with Liberty Mask. Arguello conceded that Demetech made approximately $33 million in sales to a third party, Honeywell, after Qayyum introduced Honeywell to Demetech. ECF No. [78] at 46.

Following both parties' presentation of evidence, Precision moved for Judgment as a Matter of Law pursuant to Rule 50(a). ECF No. [79] at 165. Precision sought a directed verdict as to all of Demetech's Affirmative Defenses and all of Demetech's Counterclaims, except for Breach of Contract. The Court granted Precision's Rule 50(a) motion as to some of Demetech's Affirmative Defenses but determined that Fraud in the Inducement must go to the jury. *Id*. at 186. As for Demetech's Counterclaims, Precision asserted that Demetech's claims for Fraud, Negligent Misrepresentation, and Rescission were precluded by the independent tort doctrine. *Id.* at 187. The Court rejected Precision's argument. *Id.* at 193-94. Demetech then withdrew its claim for Rescission. *Id*. at 194.

Case No. 22-cv-20976-BLOOM/Otazo-Reyes

After a charge conference, the Court instructed the jury on Precision's claims of Breach of Contract and Unjust Enrichment, Precision's Affirmative Defense of Fraud in the Inducement, and Precision's Counterclaims for Breach of Contract, Negligent Misrepresentation, and Fraud. ECF No. [65] (Court's Instructions to the Jury).

On May 11, 2023, the jury issued its verdict. ECF No. [67]. The jury found for Precision on its Breach of Contract claim, but the jury also found that Demetech successfully proved its Affirmative Defense of Fraud in the Inducement. The jury found that Demetech was not unjustly enriched by Precision. In sum, Precision did not prevail on either of its claims.

The jury found for Demetech on all three of its Counterclaims. The jury awarded $0 for Breach of Contract, $0 for Negligent Misrepresentation, and $3,000,000.00 for Fraud.

The Court discharged the jury on May 11, 2023. On May 25, 2023,[1] the Court entered Final Judgment in favor of Demetech for $3,000.000.00.

In its Rule 50(b) Motion, Precision asks "the Court to revisit three of its decisions that led to a manifestly unjust result in this case." ECF No. [71] at 1-2. Precision asserts that the Court should have (1) stricken Demetech's Counterclaims for Negligent Misrepresentation and Fraud, (2) stricken or curtailed Demetech's Fraud in the Inducement Affirmative Defense, and (3) allowed Precision to introduce two exhibits that the Court excluded.

In its Rule 59 Motion, Precision argues that, to correct "clear error" and "manifest injustice," the Court should vacate the jury's $3,000,000 award to Demetech and enter judgment in Precision's favor for $1,659,283.50, or alternatively order a new trial. ECF No. [72] at 14-15.

In its Responses, ECF Nos. [73], [75], Demetech argues that Precision's Motions are untimely and procedurally improper because Precision failed to confer with Demetech prior to

---

[1] The Court's Final Judgment was signed on May 24, 2023 and docketed the following day.

4

filing them. Demetech additionally argues that the jury's verdict was supported by the evidence presented at trial, and Precision has failed to meet its burden under Rules 50 and 59.

## II.  LEGAL STANDARD

### a.  Rule 50

"Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate only if the facts and inferences point so overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (quotation marks omitted; alteration in the original). The Court must consider the evidence in the light most favorable to the nonmoving party and determine "whether or not reasonable jurors could have concluded as this jury did based on the evidence presented." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). It is "the jury's task," not the Court's, "to weigh conflicted evidence and inferences, and determine the credibility of witnesses." *McGinnis v. Am. Home Mortgage Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quotation marks omitted).

"[A]ny renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 902 (11th Cir. 2004).

### b.  Rule 59

In addition to filing a renewed motion under Rule 50, a losing party may also move for a new trial "under Rule 59 on the grounds that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or

instructions to the jury.'" *McGinnis*, 817 F.3d at 1254 (alteration in the original) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

Unlike a Rule 50 Motion, "in a motion for a new trial the judge is free to weigh the evidence." *Id*. at 1254 (quotation marks omitted). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). A motion for new trial should be granted "when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc*., 267 F.3d 1183, 1186 (11th Cir.2001) (quotation omitted).

The standard for evaluating a Rule 59 motion for a new trial is "less stringent" than the standard for a motion for judgment as a matter of law. *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1320 n.3 (11th Cir. 1999). Therefore, failure to meet the Rule 59 standard is "fatal" to a Rule 50 motion. *Id*.

### III.  DISCUSSION

#### A. Conferral and Timeliness

The Court begins with Demetech's arguments that Precision's Motions are procedurally improper.

Demetech argues that Precision failed to confer with it prior to filing the Rule 50 and Rule 59 Motions. ECF No. [73] at 5; ECF No. [75] at 6 n.1. Precision does not respond to Demetech's argument. Demetech is correct that Local Rule 7.1(a)(3) requires a party to confer with opposing counsel prior to filing any motion except for those specifically exempted in that rule. *See* S.D. Fla. L.R. 7.1(a)(3). Motions under Rule 50 and Rule 59 are not specifically exempted. Normally, the

Court requires strict compliance with Local Rule 7.1(a)(3), which furthers judicial efficiency by encouraging the parties to resolve non-disputed issues without the Court's intervention. Here, however, Demetech opposed Precision's original Rule 50(a) Motion, so it is logical to conclude that Demetech would oppose its renewed Rule 50(b) Motion and Rule 59 Motion that seek similar relief.[2] Moreover, the Court recognizes the obvious that no party would accede to the opposing party's attempt to substitute a $3,000,000.00 judgment in its favor for a $1,659,283.50 judgment against it. In those limited circumstances, the Court finds that Precision's failure to confer is not a basis to refuse to consider the merits of the Motions.

Next, Demetech argues that Precision's Rule 50(b) Motion is untimely because it was filed more than 28 days after the jury was discharged on May 11, 2023. ECF No. [73] at 5. Renewed motions for judgment as a matter of law must be brought "[n]o later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged[.]" Fed. R. Civ. P. 50(b). On June 8, 2023, at 11:37 p.m., counsel for Precision emailed its Rule 50(b) Motion to the Court and cc'd opposing counsel. In that email, Precision's counsel explained that he was emailing the motion because the CM/ECF filing system was "down since earlier" in the evening.

The Southern District of Florida's Electronic Case Filing Administrative Procedures discuss the eventuality of an after-hours CM/ECF technical problem. *See* CM/ECF NextGen Administrative Procedures § 3H(4), *available at* www.flsd.uscourts.gov/policies-procedures. Those procedures invite parties to move for extensions of time if a technical issue prevents timely filing of a motion, but litigants are explicitly warned that the Court lacks the authority to grant extensions of time as to motions listed in Fed. R. Civ. P. 6(b)(2). *Id.* Rule 50(b) motions are listed

---

[2] The Court cautions litigants that L.R. 7.1(a)(3) authorizes the Court to deny motions and impose sanctions on attorneys who fail to comply with the conferral requirement.

therein, so the Court lacks authority to extend the deadline for filing a Rule 50(b) Motion, even by one day. However, the Court deems Precision's Rule 50 Motion to have been filed on the date Precision counsel's email was sent, on June 8, 2023. Accordingly, Precision's Rule 50 Motion is timely.

Demetech argues that Precision's Rule 59 Motion was untimely because it was filed on June 22, 2023, which, according to Demetech, was 29 days after the entry of judgment on May 24, 2023. ECF No. [75] at 6. Precision accurately responds that the 28-day period in which to file a Rule 59 Motion is triggered not when the Final Judgment is *signed*, but rather "28 days after the *entry* of the judgment." Fed. R. Civ. P. 59(e) (emphasis added); *see Ramos v. Boehringer Manheim Corp.*, 896 F. Supp. 1213, 1214 n.1 (S.D. Fla. 1994) (concluding that "the clock runs from the date the judgment was entered," not the date it was filed). As revealed by the stamp automatically generated by the CM/ECF system, Final Judgment was entered on the docket on May 25, 2023. ECF No. [70]. Precision's Rule 59 Motion was filed 28 days thereafter, so it is timely.

The Court therefore proceeds to the arguments raised in Precision's Motions.

### B.  Independent Tort Doctrine

In its Rule 50(b) Motion, Precision asserts that Demetech's claims of Fraud and Negligent Misrepresentation are "invalid under Florida's independent tort doctrine because they are all based on the exact same supposed breach of contract[.]" ECF No. [71] at 9 (citing *Reagan Wireless Corp. v. Apto Sols., Inc.*, No. 18-CV-61147-BLOOM, 2018 WL 4901127, at *3 (S.D. Fla. Oct. 9, 2018)). Demetech responds that the independent tort doctrine does not bar its tort claims because those claims are based on Precision's actions apart from Precision's breach of the Proforma Invoice. ECF No. [73] at 7.

8

The independent tort doctrine bars "a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Reagan Wireless Corp*. 2018 WL 4901127 at *3 (quotation marks omitted). However, the independent tort doctrine will not bar tort claims based on an "action beyond and independent of breach of contract that amounts to an independent tort." *Id*. (quoting *Kay v. Ingenio, Filiale De Loto-Quebec, Inc*., No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014)).

As Demetech correctly points out, Demetech adduced evidence of fraudulent activity beyond Precision's breach of its obligations under the Proforma Invoice. ECF No. [73] at 7. Additional misrepresentations included Qayyum's undisclosed relationship with Liberty Mask, Qayyum's subsequent promises to pay $9 million, and Qayyum's unauthorized use and alteration of Demetech's marketing materials. Those actions all appear within Demetech's Counterclaim, *see* ECF No. [37] ¶¶ 14, 16, 17, and they were well supported by Arguello's testimony and written evidence. In short, Demetech introduced sufficient evidence for "reasonable jurors" to conclude that Qayyum signed the Proforma Invoice as part of a broader scheme to fraudulently induce Demetech to agree to the ICA. *Combs*, 106 F.3d at 1526.

Precision's reliance on *Reagan Wireless Corporation* is unavailing. In that case, a plaintiff asserted a claim for breach of contract and a separate claim that it was fraudulently induced to enter into that same contract. *Reagan Wireless Corp.*, 2018 WL 4901127 at *3. Here, by contrast, Demetech's claims for Fraud and Negligent Misrepresentation relate to Precision's efforts to induce Demetech to enter into the ICA—a contract *separate* from the Proforma Invoice, which is the basis for Demetech's Breach of Contract claim. Claims "for fraud in the inducement and breach of contract are not mutually exclusive" as long as the fraud alleged is "separate from the performance of the contract" that forms the basis of the breach of contract claim. *Id*. Thus, *Reagan*

9

*Wireless Corporation* is inapposite, and Precision has presented no other authority to support its argument that the independent tort doctrine applies in these circumstances.

### C. Precision's Claim for Unjust Enrichment

In its Rule 59 Motion, Precision asserts that the jury committed clear error in ruling against Precision on Precision's claim for Unjust Enrichment. ECF No. [72] at 11. Precision states that the jury was properly instructed that to establish Precision's claim for unjust enrichment, Precision must prove the following:

   1. Precision gave a benefit to Demetech;
   2. Demetech knew of the benefit;
   3. Demetech accepted or retained the benefit; and
   4. The circumstances are such that Demetech, in all fairness, be required to pay Precision a fair commission for the benefit.

ECF No. [65] at 7.

Precision asserts that Precision conferred a benefit on Demetech by introducing Honeywell to Demetech, Demetech knew of that benefit, Demetech accepted that benefit, and it would be unfair not to require Demetech to pay Precision a fair commission for the benefit. *Id.* at 12. Precision asserts that "at no time did Demetech present any evidence at all for why, in all fairness, Demetech does *not* owe Precision its negotiated 5% commission." ECF No. [72] at 11.

Demetech responds that there was abundant evidence presented that could have led a jury to conclude that, in all fairness, Demetech should not be required to pay the 5% commission to Precision. That evidence included: Precision's breach of the Proforma Invoice; Qayyum's undisclosed affiliation with Liberty Mask; Qayyum's additional misrepresentations regarding Precision's intent to enter into additional contracts to purchase masks; and Qayyum's improper use of Demetech's marketing materials. The jury's conclusion that Demetech was not unjustly

enriched by Precision is not "against the clear weight of the evidence," nor will it "result in a miscarriage of justice." *Lipphardt*, 267 F.3d at 1186.

### D. Jury Instructions on Fraud in the Inducement

In its Rule 50(b) Motion, Precision argues that the Court should have stricken Demetech's affirmative defense of Fraud in the Inducement because that Affirmative Defense seeks the same relief as Demetech's Counterclaim for Rescission, which was not submitted to the jury. ECF No. [71] at 12. Precision asserts that the Court dismissed Demetech's Rescission claim, so the Court was obligated to also dismiss Demetech's Affirmative Defense.

Precision did not make this argument in its original Rule 50 Motion at trial, so it is improperly raised for the first time now. *See Doe*, 394 F.3d at 902. Even if Precision's argument were procedurally proper, the Court agrees with Demetech that it is without merit. Precision's argument appears to rest on the faulty premise that the Court determined as a matter of law that Demetech's Rescission claim was invalid. However, the record readily reflects that Demetech voluntarily withdrew its claim of Rescission. ECF No. [79] at 194. Precision has provided no support for its position that the voluntary withdrawal of a substantive claim requires that the court also strike that party's affirmative defense related to another claim.

Precision alternatively argues in its Rule 50(b) Motion that the Court should have given additional instructions related to Demetech's Affirmative Defense of Fraud in the Inducement. The Court instructed that Demetech must prove the following elements to prevail on that Affirmative Defense:

> 1. Precision falsely represented that it intended to make the initial purchase of 50 million masks and become a Demetech distributor, and these representations were material to the Independent Contractor Agreement (ICA);
> 2. Precision knew that the representation was false when it made the statement;
> 3. Precision made the representation to induce Demetech to enter into the ICA; and

11

Case No. 22-cv-20976-BLOOM/Otazo-Reyes

    4. Demetech entered into the ICA in reliance on the representation.

ECF No. [65] at 6.

    Precision argues that the Court should have added two additional elements: (a) Demetech rescinded the contract, and (b) Demetech offered to restore any benefits of the contract to Precision. ECF No. [71] at 13. Precision derives those elements from Florida law governing claims of Rescission and asserts that they should be incorporated into the Affirmative Defense of Fraud in the Inducement.

    Precision's argument is without merit. The Court's duty when sitting in diversity is not to fashion Florida law as it chooses, but rather to apply Florida law as it exists. In so doing, the Court must "adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983). The instructions the Court provided accurately state the elements of Fraud in the Inducement, as established by Florida's intermediate courts. *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 542 (Fla. 5th DCA 2003) (stating the elements of fraud in the inducement and citing decisions from other Florida District Courts of Appeals). Those four elements are also stated in the standard jury instructions for the Affirmative Defense of Fraud in the Inducement "prepared by the Florida Supreme Court Standard Jury Instructions Committee (Contracts and Business) and approved for publication by the Florida Supreme Court." The Florida Bar, *About Contract & Business Jury Instructions*, *available at* https://www.floridabar.org/rules/florida-standard-jury-instructions/contract-business-cases-4/. Accordingly, there is no "persuasive indication" that the Florida Supreme Court would disagree with the intermediate courts' recitation of the elements of Fraud in the Inducement. *Silverberg*, 710 F.2d at 690.

Case No. 22-cv-20976-BLOOM/Otazo-Reyes

### E. The Jury's Findings on Fraud in the Inducement and Negligent Misrepresentation

In its Rule 59 Motion, Precision argues that the jury committed clear error in finding for Demetech on Demetech's Affirmative Defense of Fraud in the Inducement. Precision argues that Precision's breach of the Proforma Invoice could not have been "material" to the ICA because "Demetech never formally, or even informally *via* any recorded communication, demanded payment of the Pro Forma Invoice." ECF No. [72] at 5. Precision additionally argues that it would have been irrational for Demetech to turn down sales under the ICA merely because Precision breached the $9 million Proforma Invoice. *Id*. at 7. Lastly, Precision asserts that the testimony of Arguello contradicted Demetech's statements in an Interrogatory. *Id*. Demetech responds that Arguello testified at length that "the execution of the ICA, and in fact the entire relationship [between Precision and Demetech], was premised on the fact that [Precision] fulfill the Pro Forma Invoice." ECF No. [75] at 11.

Under Florida law, materiality is a question of fact to be determined by the trier of fact. *See Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1332 (Fla. 2d DCA 1985). "Under Florida law, a fact is material if, but for the misrepresentation, the aggrieved party would not have entered into the contract." *Ribak v. Centex Real Estate Corp*., 702 So. 2d 1316, 1317 (Fla. 4th DCA 1997) (citations omitted). Whether materiality is judged by the subjective standard of Arguello or the objective standard of a reasonable person, *see* ECF No. [72] at 6 (Precision arguing that an objective standard applies), the Court agrees with Demetech that there was abundant testimony to support the jury's conclusion that Precision's performance under the Proforma Invoice was material to Demetech's decision to enter into the ICA. Precision makes much of the fact that there

13

is no evidence of Demetech sending Precision a written demand to comply with the Pro Forma Invoice. As Precision recognizes, however, Arguello testified that he orally demanded payment under the Pro Forma Invoice on multiple occasions. ECF No. [72] at 5. Moreover, it is certainly not unreasonable to find factually that a party's breach of a $9 million contract is material to the decision to enter into a second contract with that same breaching party.

Precision makes a similar argument regarding Demetech's claim for Negligent Misrepresentation, which required Demetech to prove that it "justifiably relied" on Precision's materially false statement. *See* ECF No. [65] at 7 (Jury Instructions regarding Negligent Misrepresentation). Precision argues that no reasonable jury could have found that Precision's misrepresentation regarding the Proforma Invoice was "important to" Demetech's decision to enter into the ICA, such that Demetech could have relied on that misrepresentation when entering into the ICA. ECF No. [72] at 9-10; *see* ECF No. [65] at 8-9 (jury instructions defining "reliance"). However, Arguello's testimony provided a valid basis for the Jury to conclude that Precision's fulfillment of the Proforma Invoice was "important to" Demetech's decision to enter into the subsequent ICA. The jury's conclusion was not against the weight of the evidence. *McGinnis*, 817 F.3d at 1254.

### F.  Amount of Damages

In its Rule 50(b) Motion, Precision urges the Court to "exercise its discretion to strike the Verdict's award of damages" because "there was no evidence to indicate[ ] that Demetech suffered any actual damages by entering in the ICA." ECF No. [71] at 11. Precision makes a similar argument in its Rule 59 Motion, arguing that the jury ignored the jury instructions regarding damages. ECF No. [72] at 10. Demetech responds that "there were numerous factors and misrepresentations that occurred outside of the contractual dealings with the Pro-Forma Invoice

and/or ICA, that contributed to the allegations by Demetech, and finding by the jury, that [Precision] was guilty of these misrepresentations, such that Demetech should be compensated." ECF No. [73] at 9.

"[I]n all cases, juries are presumed to follow the court's instructions." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) (citation omitted). "The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions." *Id.* Nonetheless, "a grossly excessive award may warrant a finding that the jury's verdict was swayed by passion and prejudice and thus necessitate a new trial." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985) (citation omitted). "However, a new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court." *Id.* (citations omitted).

Having reviewed the evidence presented, the Court concludes that the Jury's $3,000,000.00 award to Demetech was not "grossly excessive." *Id.* There was substantial evidence presented during the trial that Precision, through Qayyum, engaged in a fraudulent scheme against Demetech. Arguello testified that Qayyum's misrepresentations caused Demetech to needlessly purchase $6 million worth of raw materials and machines after the Proforma Invoice was signed. ECF No. [79] at 100. Arguello also explained how Qayyum's unauthorized use and alteration of Demetech's marketing materials caused Demetech to lose "a huge project" with a different company that suspected fraudulent activity. *Id.* at 107. Arguello estimated Demetech's total damages at "above nine million." *Id.* at 130. The Court concludes that the jury's verdict was supported by the evidence and was not the product of "passion and prejudice." *Goldstein*, 758 F.2d at 1447.

### G.  Admissibility of Exhibits 30 and 31

In its Rule 50(b) Motion, Precision argues that the Court erred in excluding Exhibits 30 and 31 from evidence. Precision did not raise this argument in its Rule 50(a) motion during trial, so it is improperly asserted now. *See Doe*, 394 F.3d at 902. Moreover, because this argument raises a "question[] of law arising out of alleged substantial errors in admission or rejection of evidence," Rule 59 rather than Rule 50 would have been the proper vehicle. *McGinnis*, 817 F.3d at 1254. The Court nevertheless will consider Precision's argument as if it had been properly raised within Precision's Rule 59 Motion.

Exhibit 30 is an email from Demetech to Precision, titled "Confidential Settlement Agreement." ECF No. [59-30]. Exhibit 31 is a document that was attached to that email, titled "Confidential Settlement Agreement, Mutual Release, and Covenant not to Sue." ECF No. [59-31] (the "Agreement"). The Agreement states that, "on or about November 2, 2020," Demetech and Precision "entered into an Independent Contractor Agreement for the distribution of medical products, specifically surgically [sic] masks." *Id.* The Agreement provides that, in exchange for Precision releasing any claim against Demetech for breach of the ICA, Demetech will pay Precision $200,000.00. *Id*. at 1-2.

At trial, Demetech objected to Precision's attempt to introduce Exhibits 30 and 31 on the ground that they were inadmissible under Federal Rule of Evidence 408, which prohibits the introduction of settlement offers "either to prove or disprove the validity or amount of a disputed claim[.]" FRE 408(a). The Court sustained Demetech's objection.

Precision argues that the Court erred in excluding the Agreement. While Precision recognizes that the Agreement is inadmissible to prove Demetech's liability under the ICA, Precision asserts that the Court should have been admitted for the limited purpose of establishing Precision's absence of liability under the Proforma Invoice. According to Precision: "If the jury

had been able to review the [Agreement]—and seen that, when offering to settle Precision's claims under the ICA, Demetech did not even mention the Pro Forma Invoice—the jury may have concluded that Precision is not liable under the latter." ECF No. [71] at 15.

Demetech responds that one of the central disputes in this case was whether the Proforma Invoice and ICA were related. Demetech argues that Precision is attempting to use the Agreement for the prohibited purpose of demonstrating Precision's "absence of liability." ECF No. [73] at 14 (quoting Fla. Stat. § 90.408).

As an initial matter, the parties do not address whether the Federal Rules of Evidence or the Florida Rule of Evidence govern this issue. In diversity cases, "the admissibility of evidence is a procedural issue, and therefore is governed by the Federal Rules of Evidence." *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997). However, "state substantive law may provide additional protection for evidence beyond what the federal evidentiary rules provide." *Fisk Elec. Co. v. Solo Const. Corp.*, 417 F. App'x 898, 902 n.7 (11th Cir. 2011).

Under either FRE 408(a) or Fla. Stat. § 90.408, the evidence was properly excluded. Precision does not dispute that the Agreement is an offer to settle. The Agreement provides a mutual release of all claims that "which relate to, arise from, or are in any manner connected to the partnership between the parties[.]" ECF No. [59-31] at 2. By its plain terms, the Agreement appears to resolve claims arising under the ICA and the Proforma Invoice. Because Precision sought to introduce the Agreement for the prohibited purpose of proving Precision's absence of liability under the Proforma Invoice, both FRE 408(a) and Fla. Stat. § 90.408 require the Agreement to be excluded.

Even if the Court accepts Precision's argument that the Agreement exclusively covers the ICA and is unrelated to the Proforma Invoice, admitting the Agreement would still be improper.

17

If, as Precision asserts, the Agreement has nothing to do with the Proforma Invoice, then it would not have "any tendency to make" a fact of consequence relating to the Proforma Invoice "more or less probable." FRE 401. To the extent that the Agreement's lack of reference to the Proforma Invoice is relevant to Precision's liability for breaching the Proforma Invoice, the minimal probative value of that evidence is "substantially outweighed" by the danger of unfair prejudice that would result from the jury learning that Demetech offered to settle this dispute for $200,000.00. FRE 403.

### IV.   CONCLUSION

Having considered the parties' arguments and reviewed all evidence presented in this case, the Court concludes that Precision's Motions are without merit. "[G]iven that the evidence does not overwhelmingly favor" Precision, Precision is not entitled to judgment as a matter of law under Rule 50(b). *McGinnis*, 817 F.3d at 1259 (quotation marks omitted). Nor is Precision entitled to a new trial under Rule 59, because Precision has failed to show that the jury verdict is against the weight of the evidence, the damages are excessive, or the trial was otherwise unfair. *See id.* at 1254. Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Precision's Rule 50 Motion, **ECF No. [71]**, is **DENIED**.
2. Precision's Rule 59 Motion, **ECF No. [72]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 24, 2023

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record